UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| PHILLIP DAVID OLMSTEAD,<br><br>    Plaintiff,<br><br>v.<br><br>FENTRESS COUNTY, TN, et al.,<br><br>    Defendants. | Case No. 2:16-cv-00046<br><br>Chief Judge Crenshaw<br>Magistrate Judge Newbern |

## MEMORANDUM AND ORDER

Plaintiff Phillip David Olmstead, proceeding pro se and *in forma pauperis*, has filed a motion to amend his complaint (Doc. No. 50), to which Defendants Fentress County, Tennessee; Sheriff Charles "Chucky" Cravens; Administrator Candy Norman; Sue Cravens; Dwain Matthews; Lance Stephens; and Gary Stockton[1] (collectively, the County Defendants) have responded in opposition (Doc. No. 60). Olmstead has replied in support of his motion. (Doc. No. 72.) For the reasons stated below, Olmstead's Motion to Amend (Doc. No. 50) is GRANTED.

**I.    Background**

Olmstead filed this 42 U.S.C. § 1983 action on June 23, 2016, against Defendants Fentress County, Tennessee; "Nurse Tony ("L/N/U")"; Fentress County Sheriff Chucky Cravens; Administrator Candy Norman; Correctional Officer "Sue"; Correctional Officer Ginger Goodpastor; and Correctional Officer John Does 1–4. (Doc. No. 1.) Olmstead alleges that Defendants were deliberately indifferent to his serious medical needs by failing to provide him

---

[1]     Defendants Sue Cravens, Dwain Matthews, Lance Stephens, and Ginger Goodpasture were dismissed by the Court's order dated August 23, 2017. (Doc. No. 145.)

1

with prescribed medication for hypertension during his incarceration at the Fentress County Justice Center (FCJC) and ignoring his repeated request for medical attention when his blood pressure became extremely elevated, resulting in permanent impairment of his vision. (*Id.* at PageID# 1–3, ¶¶ 1, 8–9, 12, 15.)

### A. Procedural History

On July 11, 2016, the Clerk of Court issued summonses to John Doe 3 (Lance Stephens); John Doe 4 (Gary Stockton); Fentress County, "C/O Mayor Ryan Smith"; "Nurse Tony (last name unknown)"; Charles Cravens; Candy Norman; "C/O Sue (last name unknown)"; "John Doe 2 aka C/O Dewayne (Last name unknown)"; and Ginger Goodpastor. (Doc. No. 9.) Stephens, Stockton, Charles Cravens, Norman, Sue Cravens, and Dwain Matthews filed an answer on August 22, 2016. (Doc. No. 21.) The Court determined that Mayor Smith was improperly named as a representative of Fentress County and granted his motion to dismiss. (Doc. No. 145.) The Court then ordered the reissuance of process to Fentress County, which answered on October 28, 2016. (Doc. Nos. 41, 42.) The Court also ordered that the Clerk reissue process to Defendant Anthony Martin, who, after the Court ordered his employer to provide a current service address, was served on April 11, 2017, and filed an answer on the same date. (Doc. Nos. 127–28, 136.)

On October 11, 2016, Olmstead moved for leave "to amend the complaint correcting names and dates" based on discovery. (Doc. No. 50, PageID# 180.) The County Defendants oppose Olmstead's motion on grounds that his proposed amendments are futile because they are time-barred. (Doc. No. 60, PageID# 228.)

### B. The Allegations of Olmstead's Original Complaint

In his original complaint, Olmstead states that he notified FCJC booking officers when he arrived at the jail that he took medicine for his high blood pressure. (*Id.* at PageID# 2, ¶ 9.)

2

Although Olmstead had received his blood pressure medication when incarcerated in Fentress County on other occasions, he states that he did not receive his medication at FCJC for "several weeks." (*Id.* at PageID# 3, ¶¶ 11–12.) When Olmstead signed up for sick calls in to inquire about his medication, he was told by Nurse Tony that they could not verify the prescriptions for his daily medications and would give him Clonadine instead. (*Id.* at ¶ 14.) Olmstead states that Clonadine is "a fast-acting medicine for emergency use; it is not intended for daily use." (*Id.* at ¶ 17.)

Sometime thereafter, Olmstead awoke with "a severe headache, blurred vision, dizziness, and trouble standing," which he attributed to his high blood pressure. (*Id.* at ¶ 18.) Olmstead advised FCJC officers that he needed medical attention throughout the day. (*Id.* at PageID# 3–4, ¶¶ 19, 21.) He did not receive medical attention in response to these requests. (*Id.* at PageID# 3–4, ¶¶ 20, 22, 23, 24, 29.) Olmstead states that, by 6:00 p.m., he could no longer see or walk. (*Id.* at PageID# 5, ¶ 36.) Olmstead's cellmate began kicking the cell door and repeatedly pressing the call button for help. (*Id.* at PageID# 4–5, ¶¶ 25, 37.) When an officer checked Olmstead's blood pressure, it was 250/180. (*Id.* at PageID# 5, ¶ 38.) He was taken to the emergency room and treated. (*Id.* at ¶ 39.) Olmstead states that he regained full use of his left eye but, due to nerve damage, now has only 10% vision in his right eye, which he expects to deteriorate until "he is 100% blind in that eye." (*Id.* at PageID# 6, ¶¶ 43, 45.) He states that "[t]his nerve damage was caused by the delay in treating [his] high blood pressure." (*Id.* at ¶ 46.)

## II. Legal Standard

A court reviews a motion for leave to amend a pleading under Federal Rule of Civil Procedure 15(a)(2), which provides that a court "should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). This "mandate is to be heeded" and is based upon the premise that, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject

of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). This deferential standard also provides the court discretion to deny leave to amend "based on undue delay, bad faith or dilatory motive or futility of amendment." *Pedreira v. Ky. Baptist Homes for Children*, 579 F.3d 722, 729 (6th Cir. 2009) (citation omitted); *Foman*, 371 U.S. at 182.

Amendment is futile when the proposed amendment would not survive a motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420–21 (6th Cir. 2000). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations" but must include more than "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id*. (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Finally, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**III.    Analysis**

Olmstead filed this motion for leave to amend on October 11, 2016. (Doc. No. 50.) He states that he "determined through discovery (received on October 4, 2016) the correct names [of defendants] and date[s]" of the relevant events that are the basis of his claims. (*Id.* at PageID# 180, ¶ 2.) He proposes the following amendments to his complaint: correcting the dates of the events in question, (*id.* at PageID# 183–84, ¶¶ 9, 16, 19; Doc. No. 50, PageID# 180); correcting the last name of Administrator Candy Norman to Administrator Candy Price (Doc. No. 50-1, PageID# 182); adding the last name of Nurse Anthony Martin ("Nurse Tony") (*id.*); and adding Defendants Nicole York, Josh Densmore, Tammy King, Lance Maynard, Chris Martin, Gary Stockton, and Southern Health Partners, Inc. (Doc. No. 50-1, PageID# 182.) Olmstead also removes his claims against Defendants Sue Cravens, Dwain Matthews, Lance Stephens, and Ginger Goodpastor. (*See* Doc. No. 50-1, PageID# 182.) Those defendants have been dismissed by the Court by prior order. (Doc. No. 145.) The County Defendants oppose Olmstead's motion insofar as it seeks to add new defendants to his action. They argue that these amendments are untimely and therefore futile because Olmstead filed his motion after the statute of limitations had run and the proposed amendments do not relate back to the date of his original filing. (Doc. No. 60, PageID# 225.)

**A.     Amendment of Relevant Dates**

Olmstead's Proposed Amendment Complaint states that he was arrested and taken to the FCJC on June 18, 2015 (Doc. No. 50-1, PageID# 183, ¶ 9); that he signed up for sick call on or about July 18, 2015, when he had still not received his blood pressure medications (*Id.* at PageID# 184, ¶ 16); and that he woke up on July 20, 2015, with symptoms of elevated blood pressure and was taken to the hospital later that day. (*Id.* at ¶ 19). His original complaint stated that these three events occurred in April 2015; on June 18, 2015; and on June 25, 2015, respectively. (Doc. No. 1 PageID# 2, 3 ¶¶ 8, 15, 18.) The County Defendants do not oppose Olmstead's proposed

5

amendment to change these dates (*see* Doc. No. 60, PageID# 223, 225), and the undersigned finds no prejudice, undue delay, or bad faith will result from doing so. *See Foman*, 371 U.S. at 182.

**B.     Addition of Named Defendants**

The County Defendants argue that Olmstead cannot amend his complaint to name new defendants because the statute of limitations for this action expired before he filed this motion to amend. (Doc. No. 60, PageID# 223.) A one-year statute of limitations governs claims brought under § 1983 in Tennessee. *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (citing Tenn. Code Ann. § 28-3-104(a)(1)). A plaintiff's cause of action under the Eighth Amendment for deliberate indifference to a serious medical needs accrues when he is denied medical care, even if the full extent of the resulting injury is not known until later. *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009) (citing *Hermansen v. Schickel*, 202 F.3d 268 (6th Cir. 1999)); *see also Wallace v. Kato*, 549 U.S. 384, 391 (2007). Olmstead's claim therefore accrued on July 20, 2015, the date on which he did not receive adequate medical care, and not on October 20, 2015, when Olmstead states that he learned of the extent of his injury. (Doc. No. 50-1, PageID# 184, 187, ¶¶ 19, 46; Doc. No. 72, PageID# 351–52.) Because Olmstead did not move to amend until October 11, 2016, more than one year after his cause of action accrued, his proposed amendments are untimely unless there is reason to toll the statute of limitations or the amendments relate back to the original filing under Federal Rule of Civil Procedure 15(c).

In his original complaint, Olmstead brought claims against several defendants whose full names he did not know. (Doc. No. 1.) He named these defendants as "Nurse Tony (L/N/U)," "C/O Sue L/N/U," "C/O John Doe 1," "C/O John Doe 2," "C/O John Doe 3," and "C/O John Doe 4." (*Id.* at PageID# 1.) On the same day he filed his complaint—June 23, 2016—Olmstead filed a motion for early discovery to learn these defendants' names. (Doc. No. 4.) The Court did not

address that motion until March 21, 2017, well after the statute of limitations had run. (Doc. No. 127.)

During that delay, however, Olmstead diligently pursued his rights. Olmstead states that, on July 5, 2016, he identified John Does 2–4. (Doc. No. 72, PageID# 351.) Olmstead issued summonses for those defendants on July 11, 2016, identifying John Doe 2 as "Dewayne (L/N/U/)," John Doe 3 as Lance Stephens, and John Doe 4 as Gary Stockton. (Doc. Nos. 12, 15, 17.) "Dewayne (L/N/U)" accepted service as Dwain Matthews on July 15, 2016. (Doc. No. 17.) "Sue L/N/U" accepted service as Sue Cravens on July 20, 2016 (Doc. No. 18); Lance Stephens accepted service on the same date (Doc. No. 15). Gary Stockton accepted service on July 21, 2016 (Doc. No. 12). These defendants, with Defendants Chucky Cravens and Candy Norman, answered Olmstead's complaint on August 22, 2016. (Doc. No. 21.) Olmstead states that he made his first discovery request on August 29, 2016, for information "to identify defendants." (Doc. No. 72, PageID# 351.) The served defendants responded on September 30, 2016. (*Id.*) Olmstead moved to amend his complaint on October 11, 2016. (Doc. No. 50.)

In the proposed amended complaint, Olmstead corrects the name of Administrator Candy Norman to Administrator Candy Price and "Nurse Tony L/N/U" to Nurse Anthony Martin. (*Id.*) He also adds as defendants C/O Nicole York, C/O Josh Densmore, C/O Tammy King, C/O Lance Maynard, C/O Chris Martin, and Southern Health Partners, Inc. (*Id.*) The County Defendants do not address Olmstead's amendment of Norman's last name to Price, and she continues to participate in the litigation as Candy Norman. The question to be determined, therefore, is whether the statute of limitations bars Olmstead from correcting the name of Anthony Martin and adding as new defendants York, Densmore, King, Maynard, Chris Martin, Stockton, and Southern Health Partners.

### 1. Relation Back Under Rule 15(c)

The County Defendants argue that Olmstead's proposed amendments that add new defendants do not relate back to his original complaint under Federal Rule of Civil Procedure 15(c). With the exception of Olmstead's amendment to correct the names of Candy Norman and Anthony Martin, the Court agrees. Rule 15(c) rule provides, in relevant part, that an amendment relates back to the date of the original pleading when:

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

Rule 15(c)(1)(B) is satisfied when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

As the County Defendants ably set out, the Sixth Circuit clearly holds that the addition of new parties after a statute of limitations has run does not satisfy the "mistaken identity" requirement of Rule 15(c)(1)(C)(ii). *See Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). This is true even in the case of naming a John Doe defendant. *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). The addition of defendants who were not named in Olmstead's original complaint or who were named as John Does therefore does not relate back to his original filing.[2]

---

[2] The County Defendants do not appear to oppose Olmstead's amendment to correct the name of Administrator Candy Norman to Administrator Candy Price. That amendment,

8

A different conclusion is required with regard to Olmstead's amendments to correct the name of Administrator Candy Norman to Administrator Candy Price and Nurse Tony to Anthony Martin. These amendments correct the type of "mistake concerning the proper party's identity" that Rule 15(c) contemplates. *See Chacon v. Clarksville Police Dep't*, No. 3:12-cv-00884, 2012 WL 6699655, at *5–6 (M.D. Tenn. Dec. 21, 2012) (finding relation back where there was "simply no reasonable dispute that the Complaint and the Amended Complaint relate to and name the same person"); *Johnson v. Skolski*, No. 06-13904, 2007 WL 141961, at *3 (E.D. Mich. Jan. 16, 2007) (finding relation back where plaintiff moved to amend complaint to correct misspelling of defendant's name). Norman received service of process on July 15, 2016, and answered on August 22, 2016. (Doc. No. 1, PageID# 1–2; Doc. No. 19, PageID# 82; Doc. No. 21.) She has not been prejudiced in defending against Olmstead's claims on their merits. Thus, all of Rule 15(c)'s requirements are met with regard to this amendment.

Olmstead also asks to amend his complaint to correctly name Nurse Tony as Anthony Martin. This, too, is an amendment to address a "mistake concerning the proper party's identity" under Rule 15(c). However, Martin was not served until April 11, 2016. (Doc. No. 137.) This is

---

however, would relate back to Olmstead's original filing. Olmstead originally named "Administrator Candy Norman" as a defendant; she received service of process on July 15, 2016, and filed her Answer on August 22, 2016. (Doc. No. 1, PageID# 1–2; Doc. No. 19, PageID# 82; Doc. No. 21.) Olmstead does not seek to include a new defendant in the action; he only seeks to correct a previously identified defendant's name. Correcting a name in this way is the type of "mistake concerning the proper party's identity" that Rule 15(c) contemplates. *See Chacon v. Clarksville Police Dep't*, No. 3:12-cv-00884, 2012 WL 6699655, at *5–6 (M.D. Tenn. Dec. 21, 2012) (finding relation back where there was "simply no reasonable dispute that the Complaint and the Amended Complaint relate to and name the same person"); *Johnson v. Skolski*, No. 06-13904, 2007 WL 141961, at *3 (E.D. Mich. Jan. 16, 2007) (finding relation back where plaintiff moved to amend complaint to correct misspelling of defendant's name). Norman filed a responsive pleading and knew or should have known she was the proper defendant. This amendment relates back to the date of Olmstead's original complaint.

not within the 90-day time period contemplated by Rule 4(m). However, that time period must be extended if the plaintiff shows "good cause" for doing so. Fed. R. Civ. P. 4(m). The Court finds good cause here.

Olmstead has doggedly attempted to obtain service on Martin throughout the course of the litigation. (Doc. Nos. 37, 39, 82, 96, 113.) Olmstead's original summons to Nurse Tony was accepted on July 14, 2016, by an unknown individual at the Legal Department of the Bledsoe County Correctional Complex. (Doc. No. 13.) As the Court noted in a prior order, there is no indication of whether that person was authorized to accept service for Martin. (Doc. No. 52.) Perhaps recognizing this possible error, Olmstead moved for the Court to order Martin to provide his full name and address so that proper service could be effected. (Doc. No. 37.) The Court ordered the Bledsoe County Correctional Complex to provide this information (Doc. No. 52); it did so on November 15, 2016 (Doc. No. 79). However, apparently due to the Court's error, the Court did not reissue process to Martin until March 21, 2017, at Olmstead's prompting. (Doc. No. 128.) Martin accepted service and answered on April 11, 2017. (Doc. No. 136, 137.) The Court believes Olmstead's efforts constitute "good cause" to extend the service period of Rule 4(m) to the date on which Martin was served. Accordingly, Olmstead's amendment of Nurse Tony to Anthony Martin also relates back to his initial filing under Rule 15(c).

### 2. Tolling of the Statute of Limitations

The Court's inquiry into whether Olmstead's amended complaint is time-barred does not end with relation back. The Court must also determine whether the statute of limitations should be tolled so that Olmstead's proposed amendments would be timely. A federal court applies a state's tolling statute to a § 1983 claim "as long as the result is not inconsistent with federal law or policy." *Johnson*, 777 F.3d at 845. Tennessee statutory law permits tolling of a statute of limitations "if the

person entitled to bring the cause of action is 'adjudicated incompetent.'" *Id.* (quoting Tenn. Code Ann. § 28-1-106); *Cobb ex rel. Mallardi v. Tenn. Valley Auth.*, 1 F. Supp. 3d 864, 868 (W.D. Tenn. 2014). In addition to this statutory exception (which does not apply to Olmstead), Tennessee recognizes two tolling doctrines: equitable estoppel and fraudulent concealment. *Pike v. United States*, 868 F. Supp. 2d 667, 682 (M.D. Tenn. 2012). Unlike most other states and the federal courts, Tennessee does not recognize the doctrine of equitable tolling in civil actions. *Redwing v. Catholic Bishop Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012).

Equitable estoppel applies when a defendant has "misled the plaintiff into failing to file suit within the statutory limitations period, such as by making 'specific promises, inducements, suggestions, representations, assurances, or other similar conduct . . . that the defendant knew, or reasonably should have known, would induce the plaintiff to delay filing suit.'" *Pike*, 868 F. Supp. 2d at 682 (quoting *Redwing*, 363 S.W.3d at 460–61). Olmstead has not shown that he was induced into failing to file within the one-year statute of limitations; he timely filed his original complaint. While Olmstead makes reference to Defendant Anthony Martin telling him that his vision would improve as an attempt to dissuade him from filing suit, Martin is not among the defendants who have moved to dismiss. (Doc. No. 72, PageID# 352.) The party to be estopped from asserting the defense must have engaged in misconduct. *See B&B Enters. of Wilson Cty., LLC v. City of Lebanon*, 318 S.W. 3d 839, 849 (Tenn. 2010). Olmstead does not allege that any of the County Defendants engaged in conduct to which equitable estoppel would apply.

Fraudulent concealment is also not useful to Olmstead here, and Olmstead does not argue for its application. Under Tennessee law, a claim of fraudulent concealment to toll the running of the statute of limitations has four elements:

> (1) The defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so;
>
> (2) The plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence;
>
> (3) The defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and
>
> (4) The defendant concealed material information from the plaintiff by withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry.

*Pike*, 868 F. Supp. 2d at 682. Even assuming Olmstead has satisfied some of the elements of a fraudulent concealment claim, he has not shown that the County Defendants concealed his injury "or the identity of the wrongdoer or failed to disclose material facts . . . despite a duty to do so." Olmstead did not seek the identities of unknown defendants until his request for early discovery on June 23, 2016, the day he filed his complaint. (Doc. No. 72, PageID# 351.) Defendants had no duty to provide discovery before the Court's ruling on Olmstead's early discovery motion, and they timely responded to Olmstead's first discovery request once they had been served with process. (*Id.* at PageID# 351.)

Olmstead has not shown a basis to toll the statute of limitations under Tennessee law, but again, the Court's inquiry does not end here. "To the extent state tolling law is inconsistent with federal law or policy, the court may impose the federal version of equitable tolling." *Pike*, 868 F. Supp. 2d at 683 (collecting cases). And, as this Court and others have recognized, "*a body of state tolling law that lacks a provision for equitable tolling is inconsistent with the provision of a complete federal remedy . . . and therefore is overridden by the federal doctrine.*" *Id.* at 684 (quoting *Heck v. Humphrey*, 997 F.2d 355, 358 (7th Cir. 1994), *aff'd* 512 U.S. 477 (1994)). "The doctrine of equitable tolling permits a plaintiff to sue after the statute of limitations has expired if,

through no fault or lack of diligence on his part, he was unable to sue before, even though the defendant took no active steps to prevent him from suing." *Friedmann v. Campbell*, 202 F.3d 268 (Table), No. 98-6728, 1999 WL 1045281, at *2 (6th Cir. Nov. 8, 1999) (citing *Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 561 (7th Cir. 1996)). This doctrine "is applied appropriately when the plaintiff knows he was injured yet was unable to learn the wrongdoer's identity despite all reasonable diligence." *Id.*

Here, Olmstead asked the Court to allow him to pursue early discovery immediately upon filing his complaint and before the statute of limitations had expired. (Doc. No. 3.) It is not Olmstead's fault that the Court did not address his motion until well thereafter. Further, the record shows that Olmstead worked consistently to learn the names of the additional defendants to his action during the Court's delay and, when some defendants appeared and he could pursue discovery, he immediately got the information he needed and amended his complaint. The Fifth Circuit addressed a similar situation in *Green v. Doe*, 260 F. App'x 717 (5th Cir. 2007). There, the district court denied Green's requests to conduct discovery before the statute of limitations ran, which prevented him from obtaining information to identify a John Doe defendant. *Id.* at 718. The Fifth Circuit reversed the district court's finding that Green's later attempt at amendment was time-barred, holding that the identifying information "could have been discovered if Green's initial motions for discovery had been granted. . . . There is nothing more he could have done to determine the identity of 'John Doe' within the period of limitations." *Id.* at 719.

The same conclusion must follow here. As the Sixth Circuit instructs, "[w]hen the substance of a pro se civil rights complaint indicates the existence of claims against individual officials not specifically named in the caption of the complaint, the district court must provide the plaintiff with an opportunity to amend the complaint." *Friedmann*, 1999 WL 1045281 at *1.

Olmstead used all reasonable diligence to discover the identities of the defendants to his claims. Equitable tolling is appropriately applied here to the amendments he made with information obtained through his initial discovery. His claims against Defendants York, Densmore, King, Maynard, Chris Martin, Anthony Martin, and Southern Health Partners are not time-barred.

Olmstead's claim against Stockton may also proceed. Olmstead apparently could have amended his complaint to add Stockton before the statute of limitations ran, because he had information identifying Stockton as John Doe 4 when he issued summonses. Olmstead served Stockton on July 21, 2016. (Doc. No. 12.) Thus, Olmstead did not learn Stockton's identity from the discovery he received, but did use the discovery to confirm that Stockton was a proper defendant to his claims (unlike those he had identified as John Does 2 and 3). Stockton has been on notice of this action since he was timely served. He is properly added with the other defendants to Olmstead's amended complaint.

### III. Conclusion

Olmstead's Motion for Leave to Amend Complaint (Doc. No. 50) is GRANTED. The Clerk's Office is DIRECTED to file Olmstead's Amended Complaint (Doc. No. 50-1) as a separate docket entry. The Clerk's Office is further DIRECTED to send Olmstead a service packet for the remaining defendants who have not yet appeared in this action: York, Densmore, King, Maynard, Chris Martin, and Southern Health Partners.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge