UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| PHILLIP DAVID OLMSTEAD,<br><br>    Plaintiff,<br><br>v.<br><br>FENTRESS COUNTY, TENNESSEE, et al.,<br><br>    Defendants. | Case No. 2:16-cv-00046<br><br>Chief Judge Waverly Crenshaw<br>Magistrate Judge Newbern |

**ORDER**

Now pending are two motions filed by Defendant Southern Health Partners, Inc. (SHP). (Doc. Nos. 191, 200.) The first seeks a qualified protective order that complies with the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d *et seq.* (HIPPA) and "allows the parties to obtain from any health care provider, health plan, or other entity covered by [HIPPA], any and all information relating to medical treatment provided to [Plaintiff Phillip Olmstead] for injuries allegedly incurred in the incident made the basis of this lawsuit, and to confer with such medical providers ex parte concerning such treatment." (Doc. No. 191.) Olmstead has not responded to that motion. The second motion seeks to ascertain the status of the motion for a qualified protective order and requests an expedited ruling on it. (Doc. No. 200.) For the reasons offered below, SHP's motion for a qualified protective order (Doc. No. 191) is GRANTED and its motion to ascertain status and for an expedited ruling is GRANTED. (Doc. No. 200).

**I.    Background**

This civil rights action, brought under 42 U.S.C. § 1983, arises from Olmstead's claim that, while he was incarcerated at Fentress County Jail, he was denied his hypertension medication and

his requests for urgent medical care were ignored until his "vision was completely gone and [he] could barely walk." (Doc. No. 154, PageID# 1401–05.) Olmstead's condition was stabilized at the emergency room of the Jamestown Regional Medical Center and he received follow up care at the Eye Centers of Tennessee (ECT). (*Id.* at PageID# 1405, ¶¶ 42–45.) Olmstead also saw a surgeon referred by the ECT, who informed Olmstead that "he had irreversible nerve damage and that the vision in his right eye would only get worse until he is 100% blind in that eye." (*Id.* at PageID#1405, ¶ 46.) Olmstead alleges that the nerve damage "was caused by the delay in treating [his] high blood pressure" and that SHP has "a policy of not providing 24 hour medical staffing in order to save money." (*Id.* at PageID# 1405, ¶¶ 47, 49.) Olmstead claims that the denial of medical care that caused his injury was a "foreseeable result of this policy." (*Id.* at PageID# 1405, ¶ 50.)

**II.    Analysis**

In its motion for a qualified protective order, SHP states that Olmstead was treated by "Dr. R. Keith Shuler, M.D., a retinal specialist" and that this treatment "is central to the issues in this lawsuit." (Doc. No. 191, PageID# 1549.) SHP "needs to obtain the records of Dr. Shuler, and to communicate with [him] in order to properly defend itself from the allegations made against it by [Olmstead]." (*Id.*) SHP argues that the "exceptions to HIPAA's privacy rules allow defense counsel to obtain medical records and to confer *ex parte* with [Olmstead's] treating physicians after first securing a qualified protective order consistent with HIPAA regulations." (*Id.* at PageID# 1549–50 (citing 45 C.F.R. § 164.512(e)(1)(iv)–(v).) SHP therefore requests a qualified protective order that would allow "counsel for the parties to obtain the records of [Olmstead's] health care providers who provided medical treatment to [Olmstead] after the incident made the basis of this lawsuit, and to confer *ex parte* with same." (*Id.* at PageID# 1550–51.)

2

HIPPA "provides certain privacy measures 'for any information, whether oral or recorded in any form or medium that is created and received by a healthcare provider and relates to the past, present or future physical or mental health or condition of an individual.'" *Petties v. Copeland*, Case No. 16-10743, 2016 WL 7010499, at *1 (E.D. Mich. Dec. 1, 2016) (quoting 42 U.S.C. § 1320d(4)). The Secretary of Health and Human Services has issued regulations implementing HIPPA, which provide "certain exceptions to the general rule against disclosure of patient health information without the patient's prior written consent." *Wade v. Vabnick-Wener*, 922 F. Supp. 2d 679, 687 (W.D. Tenn. 2010); *see also* 45 C.F.R. § 164.512. One such exception is found in 45 C.F.R. § 164.512(e)(1), which provides that a covered entity can disclose protected health information "in the course of any judicial proceeding" in two situations:

> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
>
> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
>
>> (A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
>>
>> (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

45 C.F.R. § 164.512(e)(1)(i)–(ii). In other words, a health care provider can disclose protected information (1) to the extent allowed by the terms of a court order or (2) in the absence of a court order, where the provider has received a subpoena or formal discovery request and has been assured that the patient is aware of the request and has not objected to it, or that the requester made

3

reasonable efforts to obtain a qualified protective order.[1] A "qualified protective order" is a court order that:

> (A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and
>
> (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

45 C.F.R. § 164.512(v)(A)–(B).

Although the text of HIPPA's regulations "does not mention the ex parte interview, federal law in this circuit permits this form of discovery" after the party seeking the interview has secured or attempted to secure a qualified protective order, which SHP points out. *Petties*, 2016 WL 7010499, at *1; *see also Wade*, 922 F. Supp. 2d at 690; (Doc. No. 191, PageID# 1550). However, "qualified protective orders for *ex parte* interviews do not issue automatically, and HIPAA does not require a court to issue them." *Thomas v. 1156729 Ontario Inc.*, 979 F. Supp. 2d 780, 785 (E.D. Mich. 2013). Rather, issuance of these orders falls within the Court's broad discretion to regulate discovery under the Federal Rules of Civil Procedure. *Id.*

Olmstead has not objected to SHP's motion and therefore it will be granted. However, the proposed protective order offered by SHP is somewhat broader than the scope of what is before the Court by its motion. For example, the proposed order provides access to health care information to all parties, although the motion is filed only on behalf of SHP. The proposed order also

---

[1] SHP appears to base its request for an order authorizing discovery of medical records containing Olmstead's protected health information, at least in part, on 45 C.F.R. § 164.512(e)(1)(ii). (*See* Doc. No. 191, PageID# 1549–60, ¶ 4 (citing 45 C.F.R. § 164.512(e)(iv), which is only relevant when 45 C.F.R. § 164.512(e)(1)(ii)(B) has been invoked).) But that provision is only relevant if SHP were attempting to obtain protected health information with discovery "that is not accompanied by an order of a court . . . ." 45 C.F.R. § 164.512(e)(1)(ii). *See Petties*, 2016 WL 7010499, at *1 (noting that section 164.512(e)(1)(ii) "is inapposite to a request for a court order").

authorizes the release of medical information regarding "any individual who is a party to this action," although it is only Olmstead's medical condition that is at issue. The Court also includes a requirement, frequently imposed by courts in this Circuit, that the protective order contain "'clear and explicit' notice" to the covered entity "about the purpose of the interview and that the [entity] is not required to speak to defense counsel." *Petties v. Copeland*, No. 16-10743, 2016 WL 7010499, at *2 (E.D. Mich. Dec. 1, 2016) (collecting cases).

### III. Conclusion

SHP's motion for a qualified protective order is GRANTED as follows:

Southern Health Partners, Inc. (SHP) is hereby GRANTED the right, upon compliance with the applicable discovery provisions of the Federal Rules of Civil Procedure and the orders of this Court, to obtain from any health care provider, health plan, or other entity covered by the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) (HIPPA) (hereinafter, "covered entity"), any and all information relating to the past, present or future medical condition of Plaintiff Phillip David Olmstead, as well as any and all information relating to the provision of health care to Olmstead and payment for the provision of such health care.

This order also authorizes counsel for SHP to communicate *ex parte* with any covered entity concerning the past, present, or future medical condition of Olmstead, as well as any and all information relating to the provision of health care to such individual and payment for the provision of such health care.

Before any *ex parte* communication takes place, counsel must provide clear and explicit notice to the covered entity or medical provider about the purpose of any *ex parte* communication and that they are not required to speak to counsel.

5

The parties are expressly prohibited from using or disclosing the protected health information obtained pursuant to this order for any purpose other than the litigation or proceeding for which it was requested. The parties are further required to return the protected health information to the covered entity or destroy it and all copies made at the immediately upon conclusion of the litigation or proceeding. *See* 45 C.F.R. §§ 163.502(b); 164.512(e)(1)(v).

Any person who reviews or receives confidential material shall not disclose such information to any other person except as allowed by and in strict conformity with this Order. Counsel shall advise all persons who are given access to confidential information of the terms of this order and shall require all persons who are given access to confidential information other than members of counsel's staff sign a copy of this order to acknowledge their familiarity with the terms of the order and its binding force. Individuals who are shown confidential information shall not be allowed to retain copies and shall not use the confidential information for any purpose unrelated to this litigation.

It is so ORDERED.

*[signature]*
ALISTAIR E. NEWBERN
United States Magistrate Judge