UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| PHILLIP DAVID OLMSTEAD,<br><br>    Plaintiff,<br><br>v.<br><br>FENTRESS COUNTY, TENNESSEE, et al.,<br><br>    Defendants. | Case No. 2:16-cv-00046<br><br>Chief Judge Crenshaw<br>Magistrate Judge Newbern |

**MEMORANDUM AND ORDER**

Defendant Southern Healthcare Partners (SHP) has filed a motion to quash a subpoena duces tecum that Plaintiff Phillip David Olmstead served on SHP on September 30, 2018. (Doc. No. 212.) Although Olmstead did not file a response in opposition to the motion to quash, his position is reflected in the joint statement of discovery issues in dispute that SHP filed with that motion. (Doc. No. 212-1, PageID# 1659.) For the reasons that follow, SHP's motion (Doc. No. 212) is GRANTED IN PART.

**I.    Background**

In this lawsuit, Olmstead claims that he was denied his hypertension medication while he was incarcerated at the Fentress County Justice Center (FCJC), leaving him permanently blind in one eye. (Doc. No. 205, PageID# 1613–19.) SHP was under contract to provide medical services to FCJC inmates while Olmstead was incarcerated there. (*Id.* at PageID# 1612, ¶ 8.) Olmstead alleges that SHP has shown a "pattern of failing to adequately train and supervise its nurses placed in the FCJF," and seeks to hold SHP liable under 42 U.S.C. § 1983 for deliberate indifference to his medical needs. (*Id.* at PageID# 1622.)

After Olmstead retained counsel, the Court entered a scheduling order, noting that "[t]he parties [had] exchanged multiple sets of discovery before Olmstead obtained counsel." (Doc. No. 195, PageID# 1570.) The order set August 10, 2018, as the deadline to serve any remaining requests for written discovery and September 10, 2018, as the deadline for responses. (*Id.*) SHP states that the parties informally extended the written discovery deadline by forty-five days; Olmstead disagrees, claiming that he never confirmed the he needed the extension. (Doc. No. 210, PageID# 1641–42; Doc. No. 212-2, PageID# 1662, ¶ 5.)

On September 5, 2018, Olmstead served SHP with a notice of deposition and subpoena duces tecum, which stated Olmstead's intent to depose SHP's corporate representative on October 5, 2018, regarding SHP's contract with the FCJC and the medical care that Olmstead received. (Doc. No. 212-2, PageID# 1662, ¶ 6; Doc. No. 212-3.) Although that notice referenced many different documents as deposition topics, it did not ask SHP to produce any of them. (Doc. No. 212-2, PageID# 1662, ¶ 6; Doc. No. 212-3.) Nonetheless, SHP "voluntarily provided [Olmstead] with several documents relating to the matters on which [Olmstead] had indicated the SHP corporate representative would be examined" in the hopes that Olmstead would cancel the deposition. (Doc. No. 212-2, PageID# 1662, ¶ 7.)

Olmstead did not cancel the deposition and, instead, on September 30, 2018, served SHP with a supplemental notice of deposition and subpoena duces tecum, which directed SHP's corporate representative to "provide and discuss" the following sets of documents:

- all contractual agreements between SHP, its agents and assigns and the Medical Director SHP had for the [FCJC] in June, July & August 2015[;]

- all contractual agreements between SHP, its agents and assigns and the On Site Manager and immediate supervisor of Nurse Anthony Martin in June, July and August 2015 for the [FCJC] contract in June, July & August 2015[;]

- SHP policies in effect in 2015 regarding managing inmates with chronic illness[;]

2

- SHP policies in effect in 2015 regarding special needs plans for inmates[;]

- SHP policies in effect in 2015 regarding chronic illness tracking logs and if there were any on [Olmstead] in June, July and August 2015[;]

- all 2015 monthly service reports SHP provided to FCJC[;]

- the clinical performance enhancement process SHP had for FCJC[;]

- the Cost Analysis forms and reports SHP generated in 2015 related to its contract with the FCJC[;]

- all physician order sheets SHP relied upon in delivering medical services to [Olmstead] in 2015[;]

- all Medication Administration Records SHP was aware of regarding [Olmstead] for 2015 as well as all other times [Olmstead] had been incarcerated in the FCJC after 2011[;]

- any investigations by SHP related to [Olmstead's] July 20, 2015 incident and/or thereafter[;] [and]

- a list of the number of lawsuits filed and/or pending in which SHP is named as a Defendant . . . .

(Doc. No. 212-4, PageID# 1676–77.)

The deposition scheduled for October 5, 2018, was rescheduled to October 26, 2018, and SHP served Olmstead with a notice of objections on October 8, 2018. (Doc. No. 212-1, PageID# 1658, ¶ 2; Doc. No. 212-5.) According to SHP and Olmstead's joint statement of discovery issues in dispute, all of SHP's objections have been addressed except for the following: SHP "objects to the issuance of subpoenas duces tecum because the deadline for written discovery has expired, and it is not permissible to use a subpoena duces tecum to obtain documents from another party after the expiration of the deadline." (Doc. No. 212-1, PageID# 1659.)

SHP argues that subpoenas under Rule 45 are not appropriately served on parties to a lawsuit, and that, therefore, the proper way to obtain the documents Olmstead seeks would have

3

been to issue a request for production of documents under Rule 34 before the written discovery deadline expired. (*Id.*; Doc. No. 212, PageID# 1656, ¶ 4; Doc. No. 212-2, PageID# 1664.) SHP states that Olmstead "never submitted a written request for production of [the documents he seeks in the subpoena]." (Doc. No. 212, PageID# 1655–56, ¶ 3.) SHP asks the Court to quash Olmstead's subpoena and enter a protective order stating that SHP need not produce any of the requested documents. (*Id.* at PageID# 1667.)

Olmstead does not address the propriety of seeking document production from a party by subpoena, instead arguing that "there were documents identified by SHP for the first time after the expiration of the [August 10, 2018] written discovery deadline." (Doc. No. 212-1, PageID# 1659.) The only example Olmstead provides of such documents is Defendant Nurse Anthony Martin's reference, during his September 14, 2018 deposition, to '12 or 13 [training] manuals'" in the room at the [FCJC] that SHP put him in when he first became the [FCJC] nurse . . . ." (*Id.*)

## II. Legal Standard

Under Federal Rule of Civil Procedure 45(d)(3)(A), the Court must, on "timely" motion, quash or modify a subpoena that "fails to allow a reasonable time to comply;" "requires a person to comply beyond the geographical limits specific in Rule 45(c);" "requires disclosure of privileged or other protected matter, if no exception or waiver applies;" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A) A motion to quash is timely if it is filed before compliance with the subpoena is required. *See Maysey v. Henkel Corp.*, No. 1:17CV-00108-GNS, 2018 WL 314859, at *2 (W.D. Ky. Jan. 5, 2018) (stating that "[i]t is well settled that, to be timely, a motion to quash a subpoena must be made prior to the return date on the subpoena.") (quoting *FTC v. Trudeau*, No. 5:12MC35, 2012 WL 5463829, at *3–4 (N.D. Ohio Nov. 8, 2012)); *see also City of St. Petersburg v. Total Containment, Inc.*, No. 06-20953CIV, 2008 WL 1995298, at *2

(E.D. Pa. May 5, 2008) ("Ample authority exists holding that timeliness means within the specified compliance period, so long as that period is of reasonable duration."). The decision to quash a subpoena lies within the sound discretion of the trial court. *Thomas v. City of Cleveland*, 57 F. App'x 652, 654 (6th Cir. 2003) (citing *Ghandi v. Police Dep't*, 747 F.2d 338, 354 (6th Cir. 1984)).

"To sustain a protective order under Rule 26(c), [SHP] must show 'good cause' for protection from one (or more) harms identified in [Rule 26(c)(1),]" which include "annoyance, embarrassment, oppression, or undue burden or expense." *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) (citations omitted). Good cause exists if, without a protective order, SHP will experience "specific prejudice or harm." *Id.* (quoting *Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop)*, 661 F.3d 417, 424 (9th Cir. 2011)). Among other things, a protective order may "forbid[] the disclosure of discovery[.]" Fed. R. Civ. P. 26(c)(1)A).

## III. Analysis

While some courts have agreed with SHP that a subpoena duces tecum cannot be used to obtain documents from a party under any circumstance, they are outnumbered by courts reaching the opposite conclusion. *See United States v. 2121 Celeste Rd. SW, Albuquerque, N.M.*, 307 F.R.D. 572, 588 (D.N.M. 2015) (finding that "[a] majority of district courts have held . . . that a [Rule 45] subpoena may be served on another party so long as it is not used to circumvent rule 34 or the other discovery rules); *see also Smith v. Gebhardt*, 240 W. Va. 426, 813 S.E.2d 79, 88–89 (2018) (Davis, J., concurring) (finding that "[a] minority of federal courts hold that a Rule 45 subpoena duces tecum may not be served on a party"). Courts adopting the minority view have pointed to the frequency of references to nonparties in the notes to Rule 45 and Rule 34's unambiguous application to parties only. *See, e.g.*, *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 100 (D. Mass. 1996). Courts embracing the majority view have emphasized that the text of Rule 45 does not limit its

5

applicability to nonparties and that there is no other rule that would require such a result. *See, e.g.*, *Mortg. Info. Servs., Inc. v. Kitchens*, 210 F.R.D. 562, 565–66 (W.D.N.C. 2002). They have also observed that an inter-party subpoena is the most logical way to secure for use at trial the original version of a document that was produced during discovery. *See id.*

But the courts that have allowed inter-party subpoenas have done so with a caveat that is fatal to Olsmtead's attempt to do so here: Rule 45 cannot be used to circumvent Rule 34 or other discovery rules. *See 2121 Celeste Rd. SW, Albuquerque, N.M.*, 307 F.R.D. at 588 (collecting cases); *Stokes v. Xerox Corp.*, No. 05-CV-71683-DT, 2006 WL 6686584, at *3 (E.D. Mich. Oct. 5, 2006). Courts in this circuit have held that subpoenas are discovery devices that are subject to the discovery deadlines in a scheduling order. *See Haley v. Kundu*, No. 1:11-CV-265, 2013 WL 12037211, at *1 (E.D. Tenn. May 7, 2013); *Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, No. 3:10CV00083, 2011 WL 13157347, at *3 (S.D. Ohio July 21, 2011); *McGuire v. Warner*, No. 05-40185, 2009 WL 2370738, at *1 (E.D. Mich. July 29, 2009). Olmstead does not dispute that limitation. Instead, he claims that he did not serve the subpoena before the August 10, 2018 deadline for written discovery because he was not aware of certain documents—like the "12 or 13 [SHP] training manuals"—until Nurse Martin's September 14, 2018 deposition. (Doc. No. 212-1, PageID# 1659.)

Even if that claim were liberally construed as an argument that there is good cause under Rule 16(b)(4) to reopen written discovery, it would fail. *See* Fed. R. Civ. P. 16(b)(4). Olmstead has not explained why he did not seek timely production of any of the documents he is seeking through the subpoena—the only documents he mentions are the training manuals, which he did not ask SHP to produce. Further, as SHP points out, Olmstead could have requested an extension of the written discovery deadline—SHP was apparently amenable to such an extension—but he

6

chose not to and instead claimed that he did not need to propound additional written discovery. *See McGuire v. Warner*, No. 05-40185, 2009 WL 2370738, at *2 (E.D. Mich. July 29, 2009) (concluding that plaintiffs' failure to request an extension of the discovery deadline to accommodate their subpoena weighed against a finding of good cause); (Doc. No. 210, PageID# 1641–42; Doc. No. 212-2, PageID# 1665–66). Allowing Olmstead to subpoena documents from SHP at this point in the proceeding would be inconsistent with the scheduling order, which Olmstead has not offered good cause to amend.

Olmstead's subpoena would also contravene Rule 34's instruction that a party have thirty days to respond to a document request.[1] Fed. R. Civ. P. 34(b)(2)(A). Olmstead's September 30, 2018 subpoena demanded that SHP produce twelve categories of documents on October 5, 2018. (Doc. No. 212-1, PageID# 1658, ¶ 2; Doc. No. 212-2, PageID# 1662.) Even after the deposition was rescheduled to October 26, 2018, SHP would have had less than thirty days to comply with the subpoena. (Doc. No. 212-1, PageID# 1658, ¶ 2.) Courts have quashed inter-party subpoenas

---

[1] This would be true even if the Court were to construe Olmstead's subpoena as a document request under Rule 30(b)(2), which allows a party to request production of documents for use at a deposition. Labeling Olmstead's subpoena a document request under Rule 30(b)(2) would not change the fact that it was served after the deadline for written discovery. *See Burke v. Air Serv Int'l, Inc.*, No. CV0702335HHKAK, 2009 WL 10696211, at *2 (D.D.C. Sept. 15, 2009) (explaining that a party cannot circumvent a discovery deadlines by using a document production request in connection with a deposition). And courts have found that Rule 34's thirty-day response period has been incorporated into Rule 30(b)(2). *See Gilbert v. E.I. Dupont De Nemours & Co.*, No. 3:15CV00988 (AWT), 2016 WL 3211682, at *3 (D. Conn. June 9, 2016) (explaining that there is nothing to "indicate that the 30-day limitation is not applicable to document requests incorporated into deposition notices") (quoting *Lagnese v. Town of Waterbury*, No. 15CV00975(AWT), 2015 WL 7432318, at *1 (D. Conn. Nov. 23, 2015)); *Schultz v. Olympic Med. Ctr.*, No. C07-5377 FDB, 2008 WL 3977523, at *2 (W.D. Wash. Aug. 22, 2008) ("It is well settled that Fed.R.Civ.P. 30(b)(2) provides that any deposition notice which is served on a party deponent and which requests documents to be produced at the deposition must comply with the thirty-day notice requirement set forth in Fed.R.Civ.P. 34.").

that would reduce the period of compliance in less than the thirty-day period provided by Rule 34(b)(2)(A). *See Parra v. State Farm Lloyds*, No. 7:14-CV-691, 2015 WL 12940023, at *1 (S.D. Tex. Jan. 13, 2015) (reasoning that, with respect to an inter-party subpoena, a "reasonable time to comply" is generally the thirty days set out in Rule 34(b)(2)(A)); *In re GB Herndon & Assocs., Inc.*, No. 10-00945, 2011 WL 3811049, at *1 (Bankr. D.D.C. Aug. 29, 2011) (explaining that "[a] deposition subpoena to a party may not be utilized to circumvent the thirty-day response time provided for in Fed. R. Civ. P. 34."); *Stokes*, 2006 WL 6686584, at *3 (quashing subpoena that was served eight days before discovery was due to close).

Olmstead's subpoena must therefore be quashed. Allowing him to conduct written discovery after the deadline has passed without a showing of good cause would impose an undue burden on SHP and scuttle the scheduling order. Fed. R. Civ. P. 45(d)(3)(A)(iv). The fact that Olmstead failed to file a response in opposition to SHP's motion to quash is another reason for it to be granted *See* M.D. Tenn. R. 7.01 (response) (explaining that, when a timely response to a motion is not filed, the motion will be deemed unopposed). Absent any other pending request for these documents, SHP's motion for a protective order is unnecessary and is DENIED WITHOUT PREJUDICE.

**IV.    Conclusion**

SHP's motion (Doc. No. 212) is therefore GRANTED with regard to quashing the supboena duces tecum and DENIED WITHOUT PREJUDICE as to the request for a protective order.

It is so ORDERED.

ALISTAIR E. NEWBERN
United States Magistrate Judge