UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| PHILLIP DAVID OLMSTEAD,<br><br>  Plaintiff,<br><br>v.<br><br>FENTRESS COUNTY, TENNESSEE, et al.,<br><br>  Defendants. | Case No. 2:16-cv-00046<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Newbern |

## MEMORANDUM AND ORDER

In this prisoner civil rights action, Plaintiff Phillip David Olmstead alleges that he was deprived of his hypertension medication while he was incarcerated at the Fentress County Justice Center (FCJC), resulting in permanent blindness in his right eye. Now pending is Olmstead's motion under Federal Rule of Civil Procedure Rule 37(c)(1) for discovery sanctions (Doc. No. 232), to which Defendants have responded in opposition (Doc. Nos. 234, 235). Olmstead filed a reply. (Doc. No. 237.)

At issue is the declaration of Olmstead's former cellmate Michael Miller, in which Miller states that the bout of high blood pressure that is the basis of Olmstead's claims was a self-induced ploy to get offsite medical care and then smuggle tobacco and other substances back into the prison. Olmstead argues that he has been prejudiced by Defendants' failure to disclose the Miller declaration until after fact depositions concluded. Olmstead asks the Court to find the declaration and the expert medical reports that rely on it inadmissible and to enter default judgment against Defendants. Olmstead's motion is without merit for two reasons: (1) Defendants timely supplemented their discovery responses with the Miller declaration and (2) even if that were not

the case, any failure to timely supplement was harmless. No sanction is warranted and Olmstead's motion (Doc. No. 232) is DENIED.

**I.      Background**

        **A. Factual History and Olmstead's Claims**[1]

When Olmstead arrived at the FCJC on June 18, 2015, he told the booking officers that he suffers from severe hypertension for which he takes medication. (Doc. No. 225, PageID# 1764, ¶11.) Although Olmstead had been incarcerated at the FCJC before and received his medication without issue, Olmstead states that, this time, he was deprived of his medication for three weeks despite persistent requests for medical care. (*Id.* at PageID# 1765, ¶¶ 13, 14.) Olmstead's health declined drastically on July 20, 2015, when he awoke with dizziness, blurred vision, and a severe headache. (*Id.* at PageID# 1765, ¶ 20.) By the end of the day, Olmstead had sought medical help multiple times to no avail and his vision was completely gone. (*Id.* at PageID# 1765–68.) At 5:15 p.m., Olmstead's blood pressure registered at 240/190 and he was transported to the emergency room, where he was stabilized before returning to the FCJC. (*Id.* at PageID# 1769.) On October 20, 2015, following his release, Olmstead learned that he had irreversible nerve damage in his right eye that would culminate in permanent blindness. (*Id.* at PageID# 1770, ¶ 50.)

Olmstead raises § 1983 claims of deliberate indifference to his medical needs against Defendants Fentress County, Tennessee; former Sheriff of Fentress County Charles Cravens; Jail Administrator Candy Price; Correctional Officers Nicole York, Josh Densmore, Tammy King, Lance Maynard, Chris Martin (C. Martin), and Gary Stockton; Nurse Anthony Martin (A. Martin); and Southern Health Partners (SHP), the entity that contracts with the FCJC to provide healthcare to inmates. (*Id.* at PageID# 1773.) He also asserts claims of intentional infliction of emotional

---

[1]      These facts are taken from Olmstead's second amended complaint. (Doc. No. 225.)

2

distress against Price, King, and Stockton.[2] (*Id.*) He seeks compensatory and punitive damages from each defendant. (*Id.* at PageID# 1774–76.)

### B. Procedural History

Olmstead filed this lawsuit pro se on June 23, 2016, while he was incarcerated at the Bledsoe County Correctional Complex. (Doc. No. 1, PageID# 7.) Because Olmstead was in prison when he filed the complaint, the parties did not exchange initial disclosures under Federal Rule of Civil Procedure 26(a)(1). *See* Fed. R. Civ. P. 26(a)(1)(B)(iv). Nonetheless, Olmstead quickly engaged in discovery, issuing multiple requests to Defendants. (*See* Doc. No. 236, PageID# 1903, ¶ 2.) An October 31, 2016 interrogatory addressed to Defendants Fentress County and Price, asked for the information required by Rule 26(a)(1)(A)(i), including "the name . . . address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses, unless the use would be soley [sic] for impeachment." (Doc. No. 232-2, PageID# 1815, ¶ 1); Fed. R. Civ. P. 26(a)(1)(A)(i). In their response, Fentress County and Price provided a list of eleven correctional officers at the FCJC. (Doc. No. 232-2, PageID# 1815.) In Olmstead's response to an almost identical interrogatory from Defendants he identified "all of the other inmates who were in the same Pod . . . that [he] was incarcerated in when [the events giving rise to the lawsuit] happened" and stated that their "identities [were] in the control of Defendant Fentress County." (Doc. No. 236-2, PageID# 1917.) Fentress County revealed who those inmates were in response to another interrogatory, providing a list that included Michael Miller. (Doc. No. 236-1, PageID# 1910, 1913–15.)

---

[2] The second amended complaint's claims of intentional and negligent infliction of emotional distress against A. Martin and SHP and breach of contract against SHP are no longer active. The Court denied Olmstead's motion for leave to file the second amended complaint as to those claims, finding their inclusion futile. (Doc. No. 224, PageID# 1757.)

Defendants deposed Olmstead on September 13, 2018. (Doc. No. 232-4, PageID# 1829.) At that time, Olmstead had been represented by counsel for more than six months. (Doc. No. 175.) During his deposition, Olmstead was asked if he remembered anybody else being in the pod with him on the day that he was taken to the emergency room. (Doc. No. 234-5, PageID# 1891.) Olmstead responded: "I remember Jeremy Donahue, Mikey Miller. I can't remember specifically. I know you'ns [sic] give me a list of the people that was in the pod, but I can't remember." (*Id.*)

Despite the reference to Miller in Olmstead's deposition, neither Olmstead nor Defendants deposed Miller before fact depositions closed on October 26, 2018. (Doc. No. 195, PageID# 1570; Doc. No. 233, PageID# 1860; Doc. No. 234, PageID# 1867–68; Doc. No. 235, PageID# 1893–94.) Instead, after learning in "mid to late October" that Miller was still in custody at the FCJC, counsel for Fentress County[3] asked Miller to discuss Olmstead's case. (Doc. No. 235, PageID# 1893–94.) Miller agreed and signed the declaration at issue on November 8, 2018. (*Id.* at PageID# 1894.) In the declaration, Miller states that his "bunk was in the same bunk area of 6 beds as [Olmstead's] . . ." and that Miller remembers Olmstead and another inmate named Lewis Whited planning "a scheme to obtain tobacco and possibly drugs . . . to bring into the jail . . . ." (Doc. No. 232-3, PageID# 1825, ¶¶ 1, 2.) The plan was that Olmstead would "'cheek' his blood pressure medication" so that his blood pressure would spike, "making it necessary to take [him] to the hospital emergency room on a specific date." (*Id.* at PageID# 1826, ¶ 3.) There, tobacco and drugs, planted by a conspirator outside the jail, would be waiting. (*Id.*) Miller asserts that he "personally witnessed [Olmstead] cheeking his medication and hiding it." (*Id.*)

---

[3] Counsel for Fentress County is also counsel for Cravens, Price, Stockton, York, Densmore, King, and C. Martin. (Doc. No. 236, PageID# 1903, ¶ 1.)

Counsel for Fentress County states that, initially, the declaration was prepared "[s]olely to memorialize [Miller's] testimony for impeachment . . . ." (Doc. No. 235, PageID# 1894.) However, on November 14, 2018, Defendants decided to share the declaration with their two medical experts—Dr. George Lyrene and Registered Nurse Sherry Cobble. (*Id.*) When Defendants disclosed their experts on November 26, 2018, they listed the Miller declaration as one of the documents that the experts had reviewed. (Doc. No. 232-6, PageID# 1851; Doc. No. 232-8, PageID# 1856.) Olmstead's counsel requested and received a copy of the declaration the next day. (Doc. No. 236-5, PageID# 1940–41.)

After reviewing the declaration, Olmstead's counsel emailed counsel for Fentress County regarding the possibility of setting up a deposition of Miller. (*Id.* at PageID# 1940.) Counsel for the county responded that Miller was scheduled to be released from jail on November 27, 2018, and that, in any event, the fact deposition deadline had passed. (*Id.* at PageID# 1939.) Olmstead's counsel objected that the declaration "was never timely provided to Plaintiff yet it was supplied to the Defendants' experts and used by them in their reports, unchallenged." [4] (*Id.* at PageID# 1939.) After two follow-up phone calls failed to resolve the parties' dispute, they filed a joint statement articulating their differences prior to a December 6, 2018 conference with the Court. (Doc. No. 230.) The Court authorized Olmstead to file this discovery motion. (Doc. No. 231.)

---

[4] Olmstead cites the following excerpt from Dr. Lyrene's report to show that the doctor relied on the Miller declaration:

> There is a sworn statement by Michael Miller a resident of the same unit at the jail at that time, that Mr. Olmstead had developed and announced to other residents of the unit a scheme to cheek (s.i.c.) his medication and create a crisis which would require his ER visit and an opportunity to acquire contraband. Mr. Miller also refutes the statement of Mr. Olmstead to the effect that he had noisily made known any sense of distress.

(Doc. No. 232-7, PageID# 1853.)

Olmstead's argument centers on the October 31, 2016 interrogatory to Fentress County and Price, which asked for the names and contact information of each person known to have discoverable information that would support their defenses. (Doc. No. 233, PageID# 1859.) Olmstead argues that Defendants' failure to supplement their response to that interrogatory to include Miller and his declaration deprived Olmstead of an opportunity to "conduct meaningful and timely discovery to challenge the truthfulness, reliability, and trustworthiness of the declaration . . . ." (*Id.* at PageID# 1860.) Now, Olmstead "will have to wait until Mr. Miller is on the witness stand at trial to cross examine him." (*Id.* at PageID# 1864.) Olmstead asks the Court to exclude Miller, Dr. Lyrene, and Registered Nurse Cobble as witnesses and to find the declaration and the expert reports that rely on it inadmissible. (*Id.*) He also asks for default judgment against all defendants. (*Id.*)

SHP and A. Martin responded in opposition on December 19, 2018. (Doc. No. 234.) They point out that the discovery response Olmstead has accused them of failing to supplement was a response of their co-Defendants Fentress County and Price. (*Id.* at PageID# 1866–67.) Therefore, SHP and A. Martin argue, they had no duty to supplement that response and Olmstead's motion should be denied as to them. (*Id.*) Alternatively, they argue that they satisfied any relevant duty to supplement by disclosing the declaration thirteen days after receiving it and on the same day it was requested. (*Id.* at PageID# 1867–68.) Finally, they argue that any failure to comply with their disclosure obligation was substantially justified and harmless, as Olmstead was aware from the outset of this action that Miller might have relevant information. (*Id.* at PageID# 1869–70.)

The remaining defendants also responded in opposition on December 19, 2018. (Doc. No. 235.) They argue that they timely disclosed and produced the Miller declaration, emphasizing that Olmstead received it well before the December 17, 2018 deadline for expert depositions. (*Id.* at

PageID# 1897–98.) They also argue that any failure to comply with their duty to supplement was substantially justified and harmless. (*Id.* at PageID# 1897–99.)

Olmstead filed a reply on December 20, 2018, in which he argues that Defendants' failure to comply with their duty to supplement was neither substantially justified nor harmless. (Doc. No. 237.) He does not respond to Defendants' assertion that he was the one who initially identified in an interrogatory response that Miller had information relevant to this lawsuit and instead focuses on the surprising content of the declaration. (*Id.* at PageID# 1942.)

On January 14, 2019, Defendants filed motions for summary judgment. (Doc. Nos. 239, 245, 247, 250.) None of those motions mentions the Miller declaration or the expert report of Nurse Cobble. Although SHP and A. Martin filed a declaration from Dr. Lyrene in support of their motion for summary judgment, that declaration does not mention the Miller declaration or assess Olmstead's credibility and instead asserts that Olmstead's "visual impairments" were not "caused or contributed to by his episode of elevated blood pressure that occurred on July 20, 2015." (Doc. No. 245-13, PageID# 2201.)

## II.     Legal Standard

Rule 26(e) requires a party who has responded to an interrogatory to timely "supplement or correct its . . . response" when the party "learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1)–(e)(1)(A). Under Rule 37(c)(1), a party who fails to provide information or identify a witness as required by Rule 26(e) "is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). However, upon motion and after giving an opportunity to be heard, the Court may

replace or supplement that sanction with others, including the sanction of striking a pleading in whole or in part or entering a default judgment. Fed. R. Civ. P. 37(c)(1)(C) (explaining that the Court "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)"); Fed. R. Civ. P. 37(b)(2)(A)(vi) (providing for the sanction of a default judgment).

To determine whether a party's "omitted or late disclosure" was substantially justified or is harmless, the Court considers five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Howe v. City of Akron*, 801 F.3d 718, 747–48 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)); *see also* Fed. R. Civ. P. 37(c) advisory committee's note to 1993 amendment (explaining that "[l]imiting the automatic sanction to violations 'without substantial justification,' coupled with the exception for violations that are 'harmless,' is needed to avoid unduly harsh penalties in a variety of situations: *e.g.*, the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; [and] the failure to list as a trial witness a person so listed by another party . . .").

**III.     Analysis**

Defendants first argue that they were not required to supplement their discovery responses to include the Miller declaration. SHP and A. Martin point out that Olmstead "has not identified any discovery request . . . which . . . required [them] to produce the Miller declaration," as the October 31, 2016 interrogatory was addressed only to co-Defendants Fentress County and Price. (Doc. No. 234, PageID# 1867.) The remaining defendants argue that the Miller declaration was

8

originally acquired for impeachment purposes only and therefore not subject to disclosure. (Doc. No. 235, PageID# 1897.) Further, they point out that the Rule 26(e)(1) duty to supplement does not apply to information that has otherwise been made known to the opposing party during discovery, and Olmstead himself stated in an interrogatory response that his fellow inmates at the FCJC, including Miller, might have information relevant to this lawsuit. Olmstead does not respond to any of these concerns in his reply.

Even assuming that all Defendants had a duty to supplement their discovery responses with the Miller declaration, Olmstead is not entitled to the requested sanctions because (1) Defendants timely supplemented their discovery responses with the Miller declaration and (2) even if that were not the case, any failure to timely supplement was harmless.

### A. Defendants' Supplementation Was Timely

Courts typically provide parties a thirty-day window to supplement discovery responses, which mirrors the time allotted to respond to interrogatories and requests for production. *See Equal Emp't Opportunity Comm'n v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 795 (E.D. Tenn. 2016); *see also* Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2). However, courts are more "likely to determine that a party violated Rule 26(e) when the party supplemented disclosures or responses after the discovery deadline in the case." *Dolgencorp*, 196 F. Supp. 3d at 795.

Here, Defendants' supplementation was timely. Eighteen days elapsed between Defendants' acquisition of the declaration on November 9, 2018, and their production of it to Olmstead on November 27, 2018. Although fact depositions closed on October 26, 2018, expert depositions were open until December 17, 2018, and Defendants' supplementation occurred before discovery was entirely closed. (Doc. No. 221.) Olmstead also did not move to extend the fact discovery period to allow Miller's deposition, instead immediately seeking the highest discovery

9

sanction of default judgment. Those facts make this case distinguishable from those that Olmstead cites to support his contention that Defendants' supplementation was untimely. *See Gipson v. Vought Aircraft Indus., Inc.*, 387 F. App'x 548, 551–52 (6th Cir. 2010) (affirming the striking of an affidavit that was not produced until after discovery was closed); *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (affirming the exclusion of the testimony of an expert who was not disclosed until seven months after discovery had closed); *Jones v. McGrath*, No. 1:12–cv–946, 2014 WL 4388262, at *7 (S.D. Ohio Sept. 5, 2014) (declining to consider reports offered in support of plaintiffs' summary judgment motion that were not disclosed prior to the discovery deadline); (Doc. No. 233, PageID# 1862).

### B. Any Failure to Timely Supplement Was Harmless

Even if the Court were to find that Defendants' supplementing of the Miller declaration was untimely and in violation of Rule 26(e)(1), Olmstead is not entitled to sanctions under Rule 37(c)(1) because that violation was harmless.

#### 1. Surprise and opportunity to cure it

Olmstead had an opportunity to cure any surprise associated with the Miller declaration. As Defendants emphasize, Olmstead identified his fellow inmates in response to an interrogatory that asked who had discoverable information that might be relevant to Olmstead's claims. Olmstead then stated during his deposition that Miller was in the pod with him on the day that he was taken to the emergency room. (Doc. No. 234, PageID# 1869; Doc. No. 235, PageID# 1893, 1898.) Before the fact deposition deadline, Olmstead was aware that Miller might be a material witness and yet Olmstead chose not to depose Miller. Even after receiving Miller's declaration, Olmstead chose not to depose Defendants' experts about the extent to which they relied on the declaration in formulating their opinions. (Doc. No. 235, PageID# 1900.) Olmstead claims that it

10

would have been "an exercise in futility to depose Defendants' experts on the issue without first having the sworn cross-examination testimony of Mr. Miller," but he does not explain why, and no reason is apparent to the Court. (Doc. No. 237, PageID# 1942–43.) The declaration from Dr. Lyrene that SHP and A. Martin filed in support of their motion for summary judgment does not reference Miller's declaration or question Olmstead's credibility. (Doc. No. 245-13.) Olmstead had an opportunity to cure any surprise associated with the Miller declaration and therefore these factors weigh against sanctions.

### 2. Impact of the evidence on trial

The untimeliness of Defendants' disclosure of the Miller declaration will not significantly impact the trial. Defendants provided the declaration before the January 14, 2019 dispositive motion deadline (Doc. No. 221) and well in advance of the April pretrial filing deadlines (Doc. No. 199). Further, SHP and A. Martin state that "they do not even intend to use the declaration at trial, unless it is used for impeachment," and, in any event, the declaration provides Olmstead with advance notice of what Miller's testimony would be. (Doc. No. 234, PageID# 1869; Doc. No. 235, PageID# 1900.) Olmstead does not respond to those arguments, and instead asserts that "Defendants' experts have issued their opinions accepting and relying on the Miller testimony as true substantive evidence." (Doc. No. 237, PageID# 1943.) It is unclear how Olmstead can conclude that the expert opinions relied on the Miller testimony without having deposed them on that topic; even if that were true, Olmstead does not explain how such reliance would disrupt the trial. This factor weighs against sanctions.

### 3. Importance of the evidence

Defendants do not assert that the Miller declaration is unimportant evidence and the Court does not reach that finding. Although Defendants do not mention the declaration in their summary

11

judgment briefing, its introduction at trial would call into question Olmstead's credibility and affect Olmstead's ability to persuade a jury that his allegations concerning his medical treatment at the FCJC are true. This factor weighs in favor of sanctions.

### 4. Defendants' explanation of their failure to timely supplement

Defendants' explanation of the timeline leading to disclosure of the Miller declaration does not evince bad faith or an effort to obstruct Olmstead's presentation of his case. Counsel for Fentress County only learned that Miller was still incarcerated at the FCJC in mid-to-late October and asserts that she "had no availability to depose or interview Mr. Miller before discovery deadlines and [therefore] felt [she] was left with trying to interview him." (Doc. No. 236, PageID# 1904, ¶ 4.) Olmstead questions that explanation, citing the statement in Miller's declaration that he was incarcerated at the FCJC from June 18, 2015 to February 22, 2017 and then again starting sometime in "mid to late 2018." (Doc. No. 237, PageID# 1944.) It is not clear why Olmstead thinks that the timeline of Miller's incarceration contradicts counsel for Fentress County's account. If anything, the Court finds that the break in Miller's incarceration at the FCJC explains why counsel for Fentress County might not have realized that Miller was incarcerated there in October 2018. This factor also weighs against sanctions.

On balance, the above factors do not support the sanctions Olmstead requests. Any failure of Defendants to timely supplement their discovery responses with the Miller declaration was ultimately harmless.

## IV. Conclusion

Defendants' timely supplemented their discovery responses with the Miller declaration. Even if that were not the case, any failure to comply with Rule 26(e)(1) was harmless. For those reasons, Olmstead's motion for sanctions under Rule 37(c)(1) (Doc. No. 232) is DENIED.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge